PD-1668-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/24/2015 3:03:05 PM
Accepted 2/26/2015 10:57:50 AM
ABEL ACOSTA
CLERK

*PD-1668-14*

IN THE

COURT OF CRIMINAL APPEALS

------------------------------------------------------------

FILED IN
COURT OF CRIMINAL APPEALS

February 26, 2015

ABEL ACOSTA, CLERK

ZACHARY BLAKE HERNANDEZ,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

------------------------------------------------------------

ON APPEAL FROM THE 385TH DISTRICT COURT
OF MIDLAND COUNTY, TEXAS

AND ON DISCRETIONARY REVIEW
FROM THE ELEVENTH JUDICIAL DISTRICT AT EASTLAND

------------------------------------------------------------

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

------------------------------------------------------------

BRIAN W. WICE
CARMEN M. ROE

440 Louisiana Suite 900
Houston, Texas 77002-1635
(713) 524-9922 PHONE
(713) 236-7768 FAX
TBA NO. 231417800
wicelaw@att.net
LEAD COUNSEL FOR APPELLANT

RANDY SCHAFFER

1301 McKinney Suite 3100
Houston, Texas 77010
(713) 951-9555 PHONE
(713) 951-9854 FAX
TBA NO. 17724500

ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES

Pursuant to **TEX.R.APP.P.** 38.1(a), a list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in this matter:

**Complainant:**
Heidi Evans

**Appellant:**
Zachary Blake Hernandez

**Trial counsel for Appellant:**
David Rogers
214 West Texas  Suite 811
Midland, Texas 79701

**Appellate Counsel:**
Jason Leach
3800 East 42nd  Suite 605
Midland, Texas 79762

**Counsel on Discretionary Review:**
Brian Wice & Carmen Roe
440 Louisiana  Suite 900
Houston, Texas 77002-1635

Randy Schaffer
1301 McKinney Suite 3100
Houston, Texas 77010

**Counsel for the State:**
Rob Hayden, Timothy Flathers, Andrew Van Der Hoven [Trial]
Carolyn Thurmond [Appeal]
Midland County District Attorney's Office
500 North Lorraine  Suite 200
Midland, Texas 79701

**Trial Judge:**
Honorable Cecil Puryear
385th District Court
Midland County, Texas

i

# TABLE OF CONTENTS

PAGE

IDENTIFICATION OF THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE PROCEDURAL HISTORY . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. Where the jury acquitted Appellant of intoxication manslaughter but convicted him of manslaughter, the court of appeals erred in holding that the evidence was sufficient to support the conviction based on the theory that he was intoxicated.

2. Where the manslaughter count of the indictment alleged that Appellant recklessly caused the death by driving a motorcycle off of the road, causing the passenger to be ejected, the court of appeals' holding that the evidence was sufficient to support the conviction based on his driving a motorcycle while intoxicated in cold weather constituted an improper constructive amendment of the indictment.

3. The court of appeals misapplied the standard of review for determining the legal sufficiency of the evidence in affirming a manslaughter conviction where the investigating officer testified that he could not determine whether the motorcycle left the road because of the conduct of the driver of another car, the motorcycle passenger, or Appellant.

4. Appellant's conviction for driving while intoxicated is barred by double jeopardy.

ARGUMENT AND REASONS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . 3

   A.  The Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   B.  The State's Primary Theory Of Causation:
       Appellant's Intoxication . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   C.  The Jury Rejected The State's Primary
       Theory Of Causation When It Acquitted
       Appellant Of Intoxication Manslaughter . . . . . . . . . . . . . . . . . 6

   D.  The Court Of Appeals Improperly Relied
       On Appellant's Intoxication To Uphold His
       Conviction For Manslaughter . . . . . . . . . . . . . . . . . . . . . . . . . 8

   E.  Reasons For Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       1. The Standard Of Review For Legal Sufficiency Challenges 10

       2. The State's Burden In Proving Manslaughter . . . . . . . . . . 13

       3.  Because Appellant Was Acquitted Of Intoxication
          Manslaughter, The Court of Appeals Erred In Relying
          On Testimony That He Was Intoxicated To Hold That
          The Evidence Was Legally Sufficient To Sustain
          His Manslaughter Conviction . . . . . . . . . . . . . . . . . . . . . . 14

       4. The Court Of Appeals Sanctioned An Improper Constructive
          Amendment Of Count Two Of The Indictment . . . . . . . . . . 15

       5. The Court Of Appeals Misapplied The Legal Sufficiency
          Standard Of Review By Affirming Appellant's Conviction
          Based On Speculation As To Recklessness . . . . . . . . . . . . . 16

6. Appellant's DWI Conviction
Is Barred By Double Jeopardy ...................... 19

CONCLUSION AND PRAYER ............................ 20

CERTIFICATE OF SERVICE ............................. 21

CERTIFICATE OF COMPLIANCE ......................... 22

APPENDIX: Court Of Appeals' Memorandum Opinion

# INDEX OF AUTHORITIES

<u>PAGE</u>

<u>CASES</u>:

Bigon v. State, 252 S.W.3d 360 (Tex.Crim.App. 2008) . . . . . . . . . . . 19

Britain v. State, 412 S.W.3d 518 (Tex.Crim.App. 2013) . . . . . . . . . . 11

DeLay v. State, 443 S.W.3d 909 (Tex.Crim.App. 2014) . . . . . . . . . . . 10

Dunn v. United States, 442 U.S. 100 (1979) . . . . . . . . . . . . . . . 15

Ex parte Brooks, 312 S.W.3d 30 (Tex.Crim.App. 2010) . . . . . . . . . . 19

Ex parte Ervin, 991 S.W.2d 804 (Tex.Crim.App. 1999) . . . . . . . . . . 19

Ex parte Knipp, 236 S.W.3d 214 (Tex.Crim.App. 2007) . . . . . . . . . . 19

Garcia v. State, 367 S.W.3d 683 (Tex.Crim.App. 2012) . . . . . . . . . . 12

Gross v. State, 380 S.W.3d 181 (Tex.Crim.App. 2012) . . . . . . . . . 11,18

Hernandez v. State, 2014 WL 6755648
(Tex.App.– Eastland November 26, 2014) . . . . . . . . . . . . . . 2,8,14,15

Herrin v. State, 125 S.W.3d 436 (Tex.Crim.App. 2002) . . . . . . . . . 12,18

Hooper v. State, 214 S.W.3d 9 (Tex.Crim.App. 2007) . . . . . . . . . . . 17

Jackson v. Virginia, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . 10,12

Lane v. State, 151 S.W.3d 188 (Tex.Crim.App. 2004) . . . . . . . . . . . 11

Lozano v. Lozano, 52 S.W.3d 141 (Tex. 2001) . . . . . . . . . . . . . . . 17

Matson v. State, 819 S.W.2d 839 (Tex.Crim.App. 1991) . . . . . . . . . . . 12

May v. State, 726 S.W.2d 573 (Tex.Crim.App. 1987) . . . . . . . . . . . . . 19

McCormick v. United States, 500 U.S. 257 (1991) . . . . . . . . . . . . . . 15

State v. Neff, 841 S.W.2d 68 (Tex.App.– El Paso 1982, no pet.) . . . . . 20

Stobaugh v. State, 421 S.W.3d 787
    (Tex.App.– Fort Worth 2014, pet. ref'd) . . . . . . . . . . . . . . . . 16,17

Swearingen v. State, 101 S.W.3d 89 (Tex.Crim.App. 2003) . . . . . . . . 11

United States v. Crain, 33 F.3d 480 (5th Cir. 1994) . . . . . . . . . . . . . 11

Williams v. State, 235 S.W.3d 742 (Tex.Crim.App. 2007)  10,11,13,14,18

Winfrey v. State, 393 S.W.3d 763 (Tex.Crim.App. 2013) . . . . . . . . . . 11

Winfrey v. State, 323 S.W.3d 875 (Tex.Crim.App. 2010) . . . . . . . . . . 18

Wooley v. State, 273 S.W.3d 260 (Tex.Crim.App. 2008) . . . . . . . . . . 15

Zuliani v. State, 383 S.W.3d 289
    (Tex.App. – Austin 2012, pet. ref'd) . . . . . . . . . . . . . . . . . . . 19

## TEXAS RULES OF APPELLATE PROCEDURE:

Rule 66.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 66.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 66.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,20

Rule 70.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## TEXAS PENAL CODE:

Section 6.03(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Section 19.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TEXAS RULES OF EVIDENCE:

Rule 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rule 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*PD-1668-14*

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

---------------------------------------------------------------------------------

ZACHARY BLAKE HERNANDEZ,
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

---------------------------------------------------------------------------------

*TO THE COURT OF CRIMINAL APPEALS:*

ZACHARY BLAKE HERNANDEZ, Appellant in the above-styled and numbered cause, by Counsel of Record, BRIAN W. WICE, RANDY SCHAFFER, and CARMEN ROE, pursuant to TEX.R.APP.P. 70.1, submits his Petition for Discretionary Review.

## I. STATEMENT REGARDING ORAL ARGUMENT

Oral argument is warranted because this case presents significant issues regarding a defendant's due process right not to have his conviction affirmed on a theory neither pled in the indictment nor proven at trial.

1

## II. STATEMENT OF THE CASE

Appellant was charged with intoxication manslaughter (count one) and manslaughter (count two). (CR 10-11). The jury acquitted him of intoxication manslaughter but convicted him of driving while intoxicated (DWI)(CR 321); convicted him of manslaughter (CR 323); and found that he did not use his motorcycle as a deadly weapon. (CR 327). The jury rejected his application for community supervision (CR 303) and assessed his punishment at six months in jail and a $2,000 fine for DWI (CR 339) and five years in prison and a $10,000 fine for manslaughter. (CR 341).

The Eastland Court of Appeals affirmed the convictions. **Hernandez v. State**, 2014 WL 6755648 (Tex.App.– Eastland November 26, 2014)(not designated for publication).

## III. STATEMENT OF THE PROCEDURAL HISTORY

The court of appeals issued its opinion on November 26, 2014. Appellant's petition for discretionary review is due on February 27, 2015.

## IV. GROUNDS FOR REVIEW

1.    Where the jury acquitted Appellant of intoxication manslaughter but convicted him of manslaughter, the court of appeals erred in holding that the evidence was sufficient to support the conviction based on the theory that he was intoxicated.

2

2. Where the manslaughter count of the indictment alleged that Appellant recklessly caused the death by driving a motorcycle off of the road, causing the passenger to be ejected, the court of appeals' holding that the evidence was sufficient to support the conviction based on his driving a motorcycle while intoxicated in cold weather constituted an improper constructive amendment of the indictment.

3. The court of appeals misapplied the standard of review for determining the legal sufficiency of the evidence in affirming a manslaughter conviction where the investigating officer testified that he could not determine whether the motorcycle left the road because of the conduct of the driver of another car, the motorcycle passenger, or Appellant.

4. Appellant's conviction for driving while intoxicated is barred by double jeopardy.

## V. ARGUMENT AND REASONS FOR REVIEW

### A. THE INDICTMENT

Count one alleged that Appellant, while intoxicated and by reason of that intoxication, caused the death of Heidi Evans by accident and mistake "by failing to maintain the motorcycle on the roadway and by driving the said motorcycle off of the roadway and causing the said motorcycle to wreck and fall to the ground," resulting in Evans being ejected and thrown from the motorcycle. (CR 10).

Count two alleged that Appellant caused the death by "failing to maintain the motorcycle on the roadway and by driving the said

3

motorcycle off of the roadway and causing the said motorcycle to wreck and fall to the ground causing Heidi Evans to be ejected and thrown from the motorcycle..." (CR 11).

The State's primary theory of causation was intoxication. Its secondary theory was based on the investigating officer's speculation that the accident was caused by speed and/or delayed reaction time. The jury rejected the primary causation theory by acquitting Appellant of intoxication manslaughter. The court of appeals sustained the manslaughter conviction based on the secondary theory that was neither pled in count two nor proven beyond a reasonable doubt.

## B. THE STATE'S PRIMARY THEORY OF CAUSATION: APPELLANT'S INTOXICATION

City of Midland police officer Allen Lape described the scene of the accident as a "slight S-curve." (5 RR 15). Evans was not wearing a helmet.[1] (5 RR 28). Lape could not determine whether the accident was caused by gravel or an oil slick on the road or by a vehicle pulling in front of Appellant. (5 RR 28).

---

[1] Wearing a helmet increases the odds of surviving a motorcycle accident. (5 RR 27).

In response to Appellant's objections[2] that Richard Moore, a Midland police officer, was unqualified[3] to testify as to the cause of the accident, Moore testified outside the presence of the jury that:

- He could not determine where Appellant's motorcycle left the road. (5 RR 63).

- He could not determine the speed of the motorcycle when it left the road. (5 RR 64).

- He could not determine whether the driver of another vehicle could have caused the accident. (5 RR 64).

- He could not determine whether Evans' movements may have caused the motorcycle to sway, which could have caused the accident. (5 RR 64).

- Although he believed that the accident was caused by speeding and/or delayed reaction time, there was no evidence of speeding, and his opinion of regarding delayed reaction time was based solely on Appellant's blood-alcohol level. (5 RR 65).

Moore testified before the jury that it is "not uncommon" for a motorcycle driver who is speeding or whose reaction time is delayed to

---

[2] Appellant objected to Moore's testimony on the grounds that he lacked personal knowledge as required by Rule of Evidence 602; he was unqualified to testify as an expert under Rules 702 and 703; his testimony was not relevant under Rules 401 and 402; and, assuming that his testimony was relevant, it was unfairly prejudicial, confusing, and misleading under Rule 403. (5 RR 62). The trial court overruled the objections and granted a running objection. (5 RR 69-70). Inexplicably, appellate counsel did not raise this preserved issue on direct appeal.

[3] Tellingly, Moore had investigated only three accidents, none of which appeared to involve a motorcycle accident. (5 RR 55).

5

"run wide at the end of a corner" and leave the road. (5 RR 70-71). When asked what factors caused this accident, he speculated that "the leading cause in my training and experience for a motorcycle to run wide at the end of a corner is speed and/or delayed reaction time." (5 RR 73).

Moore admitted on cross-examination that:

- Vehicles have run him off the road while he was driving a motorcycle. (5 RR 84).

- A passenger can cause an accident.[4] (5 RR 84-85).

- He always wears a helmet when he rides a motorcycle because it increases the chances of surviving an accident. (5 RR 85).

Appellant's blood-alcohol level was 0.27. (5 RR 108). Dr. Ronald Becker, a board-certified forensic toxicologist, testified that, in his opinion, a driver with a blood-alcohol concentration of 0.27 cannot safely operate a motorcycle.[5] (5 RR 158).

## C. THE JURY REJECTED THE STATE'S PRIMARY THEORY OF CAUSATION WHEN IT ACQUITTED APPELLANT OF INTOXICATION MANSLAUGHTER

The prosecutor argued during summation that the jury should

---

[4] Appellant's friend. Adam Pruett. an experienced motorcycle rider, testified that he had been involved in an accident caused by his passenger. (4 RR 78). Appellant, an experienced motorcycle rider. testified that a passenger who shifts her weight can cause an accident. (6 RR 47).

[5] The trial court denied Appellant's motion for judgment of acquittal on the ground that there "is no evidence of any type of causation ... or ... what caused the wreck." (6 RR 23).

6

convict Appellant of intoxication manslaughter based on the theory that his intoxication caused Evans' death:

- "Which brings us to what it all boils down to, causation: did his intoxication cause the death of Heidi. ... And I submit to you that there is a ton of evidence that shows [his] intoxication caused [her] death." (6 RR 100).

- "And I think – you know, intoxication, which is the true causation. ... I think it would be debatable if we were looking at .08 or .10 or .11. But we're talking about three times the legal limit, .27. That's a lot. How could alcohol not cause it, to an obscene level of intoxication? There is no way." (6 RR 103).

- "He can't negotiate a simple curve like this? I mean, look at that curve. It's a slight S. It's not that difficult to negotiate for a sober person. For an intoxicated person, different story. .27, yeah, going to have issues, all right?" (6 RR 104).

- "Look at that curve. It's easy to follow it. Officer Moore testified that he's done it on several occasions successfully, sober. But [Appellant] can't do it because he was a .27." (6 RR 104).

- "He's able to get the live Heidi to the bar, but he can't get Heidi back to his house because of intoxication. That's causation right there." (6 RR 104).

- "So did the intoxication of the Defendant cause Heidi's death? I mean, you look at everything, like I said, in its totality, in its whole, and you have to come to an astounding yes. I mean, like I said, what else could it possibly be? I can't tell you." (6 RR 105).

- "Blood alcohol of .27. He didn't dispute it. That's what it comes down to. ... That's causation, too, right there, I mean, total also [sic] of mental and physical abilities." (6 RR 105-106).

7

- "But I think we can all say that the Defendant was intoxicated and his intoxication caused Heidi's death. .. They went down 250. He couldn't negotiate that simple curve. And that's what happened there. And now we know the truth." (6 RR 106-107).

The jury rejected the intoxication theory of causation when it acquitted Appellant of intoxication manslaughter. (6 RR 109-110).

## D. THE COURT OF APPEALS IMPROPERLY RELIED ON APPELLANT'S INTOXICATION TO UPHOLD HIS CONVICTION FOR MANSLAUGHTER

The court of appeals described the accident as follows: "The wreck occurred on a slight 'S curve' in the roadway when Hernandez failed to make the right end of the 'S curve' and hit a curb. Hernandez and Evans were both ejected from the motorcycle." **Hernandez v. State**, 2014 WL 6755648 at *2. Viewing the evidence in the light most favorable to the verdict, the court held:

> [Appellant] was an experienced motorcycle rider and was familiar with the detrimental effects that cold weather could have had on the driver of a motorcycle. *He drove his motorcycle in that weather when, by his own admission, he was intoxicated: he had a blood alcohol concentration of 0.27, over three times the level at which a person is deemed to be legally intoxicated.* Under the evidence and the inferences to be drawn from that evidence, a rational jury could have found that *it was in that state and under those circumstances* that [Appellant], with Evans as his passenger, failed to negotiate a curve and wrecked his motorcycle, which resulted in Evans's death. We hold that, based on the evidence that we have outlined and the reasonable inferences to drawn from it, a

8

rational juror could have found the essential elements of the offense of manslaughter beyond a reasonable doubt.

Id. at *3. (emphasis added).

The court of appeals, by affirming Appellant's manslaughter conviction based on the intoxication theory of causation that the jury rejected when it acquitted him of intoxication manslaughter, decided an important question of law that has not been, but should be settled by this Court. It also sanctioned an improper constructive amendment of the indictment, in conflict with decisions from the Supreme Court and this Court, by upholding the conviction based on the unpled theory that Appellant recklessly caused Evans' death by driving while intoxicated in cold weather. Finally, it misapplied the standard of review for determining the legal sufficiency of the evidence by affirming the conviction where the investigating officer could not determine whether the motorcycle left the road because of the conduct of the driver of another car, the motorcycle passenger, or Appellant. Discretionary review is warranted pursuant to TEX.R.APP.P. 66.3(b) and (c).

9

## D. REASONS FOR REVIEW

### 1. The Standard Of Review For Legal Sufficiency Challenges.

Federal due process requires that the State prove each element of the offense charged beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 313 (1979). An appellate court reviewing the legal sufficiency of the evidence to support a conviction must consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. **DeLay v. State**, 443 S.W.3d 909, 912 (Tex.Crim.App. 2014). The appellate court must "ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." **Williams v. State**, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). "If the evidence establishes precisely what the State has alleged, but the acts that the State has alleged do not constitute a criminal offense under the totality of the circumstances, then that evidence, as a matter of law, cannot support a conviction." **Id.;** see also **DeLay v. State**, 443 S.W.3d at 912 ("But sometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed

10

in the light most favorable to conviction actually established a violation of the law." While this standard is deferential, it does not insulate a jury verdict from meaningful appellate review. **See e.g., Britain v. State**, 412 S.W.3d 518, 523 (Tex.Crim.App. 2013)(sustaining challenge to sufficiency of the evidence); **Winfrey v. State**, 393 S.W.3d 763, 774 (Tex.Crim.App. 2013)(same); **Gross v. State**, 380 S.W.3d 181, 189 (Tex.Crim.App. 2012)(same); **Williams v. State**, 235 S.W.3d at 769 (same); **see also United States v. Crain**, 33 F.3d 480, 487 (5th Cir. 1994)("Although the strict nature of this standard demonstrates our reluctance to interfere with jury verdicts, this case is an example of why courts of appeals must not completely abdicate responsibility for reviewing jury verdicts.").

The appellate court must remain cognizant that "proof beyond a reasonable doubt" means "proof to a high degree of certainty." **Lane v. State**, 151 S.W.3d 188, 192 (Tex.Crim.App. 2004). If a rational jury, viewing the evidence in the light most favorable to the verdict, must necessarily have a reasonable doubt as to the appellant's guilt, due process requires an appellate acquittal. **Swearingen v. State**, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003). The evidence is legally insufficient to sustain the conviction where there is no evidence or merely a "modicum" of

evidence probative of an element of the offense. **Garcia v. State**, 367 S.W.3d 683, 687 (Tex.Crim.App. 2012). "If the evidence at trial raised only a suspicion of guilt, even a strong one, then that evidence is insufficient." **Herrin v. State**, 125 S.W.3d 436, 443 (Tex.Crim.App. 2002). The legal sufficiency of the evidence is a question of law that an appellate court reviews *de novo*. **Matson v. State**, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991).

The standard of proof beyond a reasonable doubt "plays a vital role in the American scheme of criminal procedure, because it operates to give 'concrete substance' to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding." **Jackson v. Virginia**, 443 U.S. at 315 (citation omitted). By impressing upon the fact finder the need to reach a subjective state of near certitude of the accused, this standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. **Id**. "A properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." **Id**. at 317.

## 2. The State's Burden In Proving Manslaughter.

The State must prove beyond a reasonable doubt that the defendant recklessly caused the death of an individual to sustain a conviction for manslaughter under section 19.04 of the Penal Code. Section 6.03(c) of the Penal Code provides that a person acts "recklessly" "when he is aware of but consciously disregards a substantial and unjustifiable risk .... The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." The culpable mental state for manslaughter applies to the result of the defendant's conduct. **Britain v. State**, 412 S.W.3d at 520.

In **Williams v. State**, 235 S.W.3d 742 (Tex.Crim.App. 2007), perhaps the most important case this Court has written on the culpable mental state of recklessness necessary to sustain a conviction for manslaughter, this Court reaffirmed the following principles:

- "Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, ordinary carelessness, however serious the consequences may happen to be, do not rise to the level of criminal recklessness. Recklessness requires the defendant to actually foresee the risk involved and to consciously disregard it. It is a callous disregard of risk, and not awareness *vel non* of risk which is critical." **Id**. at 751.

13

- "Determining whether an act or omission involves a substantial risk requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight." Id. at 753.

- "Whether a defendant's conduct involves "an extreme degree of risk" must be determined by the conduct itself and not by the resultant harm. Criminal liability cannot be predicated on every careless act merely because its carelessness results in death." Id.

*3. Because The Jury Acquitted Appellant Of Intoxication Manslaughter, The Court of Appeals Erred In Holding That The The Evidence Was Legally Sufficient To Sustain His Manslaughter Conviction Based On The Theory That He Was Intoxicated.*

The jury, by acquitting Appellant of intoxication manslaughter, necessarily found that his intoxication did not cause Evans' death. Nonetheless, the court of appeals concluded that the evidence was sufficient to sustain the manslaughter conviction based primarily on his intoxication:

> [Appellant] was an experienced motorcycle rider and was familiar with the detrimental effects that cold weather could have had on the driver of a motorcycle. *He drove his motorcycle in that weather when, by his own admission, he was intoxicated; he had a blood alcohol concentration of 0.27, over three times the level at which a person is deemed to be legally intoxicated.* Under the evidence and the inferences to be drawn from that evidence, a rational jury could have found that *it was in that state and under those circumstances* that [Appellant], with Evans as his passenger, failed to negotiate a curve and wrecked his motorcycle, which resulted in Evans's

death.

Hernandez v. State, 2014 WL 6755648 at *3 (emphasis added).

The doctrine of collateral estoppel precludes the court of appeals from upholding the manslaughter conviction based on the theory that Appellant's intoxication caused Evans' death where the jury acquitted him of intoxication manslaughter, as the jury found that his intoxication did not cause the death. The court of appeals erred in holding that the evidence was legally sufficient to sustain the manslaughter conviction based on the intoxication theory of causation. Discretionary review is required because this important question of law has not yet been, but should be, settled by this Court.

### 4. The Court Of Appeals Sanctioned An Improper Constructive Amendment Of Count Two Of The Indictment.

It is a violation of due process for an appellate court to affirm a conviction based upon a theory not alleged in the indictment, even if the facts necessary to support that theory were presented to the jury. Dunn v. United States, 442 U.S. 100, 105 (1979); see also McCormick v. United States, 500 U.S. 257, 270, n. 8 (1991); Wooley v. State, 273 S.W.3d 260, 271-272 (Tex.Crim.App. 2008).

Count two of the indictment alleged that Appellant committed manslaughter by recklessly causing Evans' death by driving his motorcycle off of the road and causing her to be ejected. The court of appeals affirmed the conviction based on the theory that he caused her death by driving while intoxicated in cold weather. The State did not allege in count two that he recklessly caused her death by driving a motorcycle while intoxicated in cold weather. The court of appeals could not properly affirm the manslaughter conviction on a theory not alleged in the indictment. Discretionary review is required to determine whether this constituted an improper constructive amendment of the indictment in violation of the Supreme Court's and this Court's precedent.

### 5. The Court Of Appeals Misapplied The Legal Sufficiency Standard By Affirming Appellant's Conviction Where The Investigating Officer Speculated Regarding The Cause Of The Accident.

Officer Moore could not determine the cause of the accident based on the evidence at the scene. He testified that it is "not uncommon" and "the leading cause" for an accident to occur due to speeding and/or delayed reaction time. (5 RR 70-71, 73). His testimony that these factors caused the Evans' death was based on an educated guess. See Stobaugh v. State,

16

421 S.W.3d 787, 867 (Tex.App.– Fort Worth 2014, pet. ref'd)("The conclusion that [appellant] possessed the *mens rea* for the offense of murder was simply theorizing or guessing..."). Tellingly, he admitted that he could not determine whether (and could not exclude the possibility that) Appellant's motorcycle left the road because of the conduct of another driver, the passenger, or Appellant. (5 RR 84-85). Indeed, Officer Lape also could not determine whether the accident was caused by another driver or adverse road conditions. (5 RR 27-28).

The court of appeals' affirmance based on sheer speculation calls to mind this Court's admonition in a similar case:

> [J]uries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions... Speculation is mere theorizing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt... [Juries] are not permitted to draw conclusions based on speculation.

Hooper v. State, 214 S.W.3d 9,15 (Tex.Crim.App. 2007); see also Lozano v. Lozano, 52 S.W.3d 141, 148 (Tex. 2001)(jurors "may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences none more probable than the other.");

17

<u>Gross v. State</u>, 380 S.W.3d at 188 ("Although the jury is free to make inferences from the evidence presented, the conviction here was based on pure speculation.").

Conduct must involve an "extreme degree of risk" to rise to the level of recklessness – the gravaman of manslaughter. Criminal liability cannot be predicated on every careless act that results in death. **Williams v. State**, 235 S.W.3d at 751, 753. Although the evidence may raise a strong suspicion of guilt, no rational juror could find that the State proved the essential elements of recklessness and causation beyond a reasonable doubt. See **Winfrey v. State**, 323 S.W.3d 875, 885 (Tex.Crim.App. 2010) ("[W]hile this evidence may raise a strong suspicion of appellant's guilt, we nevertheless decide that ... it is insufficient to establish a person's guilt beyond a reasonable doubt."); **Herrin v. State**, 125 S.W.3d at 443 ("If the evidence at trial raised only a suspicion of guilt, even a strong one, then that evidence is insufficient."). The court misapplied the standard of review for determining the legal sufficiency of the evidence by affirming Appellant's manslaughter conviction based on evidence that merely raised a strong suspicion of guilt. Discretionary review is required because this decision is at odds with the Supreme Court's and this Court's precedent.

18

## 6. *Appellant's DWI Conviction Is Barred By Double Jeopardy*

Appellant did not contend in the court of appeals that his DWI conviction was barred by double jeopardy. Ordinarily, a procedural default precludes this Court from considering a claim. **Ex parte Brooks**, 312 S.W.3d 30, 33 (Tex.Crim.App. 2010)(this Court "cannot review a decision [of the court of appeals] that has not been made."). Appellant's case should provide an exception to the general rule because the double jeopardy violation is clearly apparent from the face of the record. **Bigon v. State**, 252 S.W.3d 360, 369 (Tex.Crim.App. 2008). Thus, this Court can consider the issue. **See Ex parte Knipp**, 236 S.W.3d 214, 216 n. 3 (Tex.Crim.App. 2007)(where meritorious double jeopardy claim is apparent from the record, "[I]t would serve no legitimate state interests to enforce the usual rules of procedural default.").

Appellant could not have been convicted of both intoxication manslaughter and DWI, **May v. State**, 726 S.W.2d 573, 576 (Tex.Crim.App. 1987); intoxication manslaughter and manslaughter, **Ex parte Ervin**, 991 S.W.2d 804, 817 (Tex.Crim.App. 1999); or reckless driving and deadly conduct. **Zuliani v. State**, 383 S.W.3d 289, 299 (Tex.App.– Austin 2012, pet. ref'd). Because the State argued that the

19

reckless conduct that caused Evans' death was Appellant's intoxication, he could not be convicted of both manslaughter and DWI. Cf. State v. Neff, 841 S.W.2d 68, 72 (Tex.App.– El Paso 1982, no pet.)(defendant previously convicted of traffic violation could not be prosecuted for DWI where prosecutor argued that traffic violation proved intoxication). Because Appellant's convictions for both manslaughter and DWI are not permitted by decisions from this Court and the courts of appeals, discretionary review is warranted pursuant to Rule 66.3(a) and (c).

## VI. CONCLUSION AND PRAYER

Appellant prays that this Court grant discretionary review, reverse the judgment of the Eleventh Court of Appeals, and remand to the trial court for the entry of a judgment of acquittal or, in the alternative, to dismiss the DWI conviction.

RESPECTFULLY SUBMITTED,

/s/ **Brian W. Wice**

**BRIAN W. WICE**

440 Louisiana   Suite 900
Houston, Texas 77002-1635
(713) 524-9922 PHONE
(713) 236-7768 FAX
TBA NO. 21417800

20

/s/ **Randy Schaffer**

**RANDY SCHAFFER**

1301 McKinney Suite 3100
Houston, Texas 77010
(713) 951-9555 PHONE
(713) 951-9854 FAX
Bar No. 17724500

/s/ **Carmen M. Roe**

**CARMEN M. ROE**

440 Louisiana   Suite 900
Houston, Texas 77002-1635
(713) 236-7755 PHONE
(713) 236-7768 FAX
TBA NO. 21417800

**ATTORNEYS FOR APPELLANT**
ZACHARY BLAKE HERNANDEZ

## CERTIFICATE OF SERVICE

This petition was served on Carolyn Thurmond, Midland County District Attorney's Office, 500 North Lorraine, Midland, Texas, 79701, and State Prosecuting Attorney Lisa McMinn, P.O. Box 130046, Austin, Texas, 78711, by e-filing on February 24, 2015.

/s/ **Brian W. Wice**

**BRIAN W. WICE**

21

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX.R.APP.P. 9.4(1)(i)(1), I certify that this document complies with the type-volume limitations of TEX.R.APP.P. 9.4(i)(2)(D):

1. Exclusive of the exempted portions set out in TEX.R.APP.P. 9.4(i)(1), this document contains 3,806 words.

2. This document was prepared in proportionally spaced typeface using Word Perfect 8.0 in Century 14 for text and Century 12 for footnotes.


/s/ **Brian W. Wice**

_____

**BRIAN W. WICE**

22

APPENDIX


EASTLAND COURT OF APPEALS' OPINION

2014 WL 6755648

DELIVERED NOVEMBER 26, 2014

2014 WL 6755648
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH. SEE TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Eastland.

Zachary Blake Hernandez, Appellant

v.

The State of Texas, Appellee

No. 11–12–00348–CR  |
Opinion filed November 26, 2014

On Appeal from the 385th District Court, Midland
County, Texas, Trial Court Cause No. CR38343

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

**MEMORANDUM OPINION**

JIM R. WRIGHT, CHIEF JUSTICE

**\*1** In a two-count indictment, the grand jury indicted
Zachary Blake Hernandez first for the offense of intoxicated
manslaughter and next for the offense of manslaughter. After
a jury trial, as to count one, the jury found Hernandez not
guilty of the charged offense of intoxicated manslaughter and
instead found him guilty of the lesser-included offense of
driving while intoxicated. As to count two, the jury found
Hernandez guilty of manslaughter but found that Hernandez
did not use a deadly weapon. The jury assessed Hernandez's
punishment for the DWI conviction at confinement for 180
days, and it also assessed a $2,000 fine. For the manslaughter
conviction, the jury assessed Hernandez's punishment at
confinement for five years, and it also imposed a fine of
$10,000. The jury declined to recommend probation, and the
trial court sentenced Hernandez in accordance with the jury's
verdict.

Hernandez has not challenged his DWI conviction. However,
in a single issue, he maintains that the evidence is not
sufficient to support his manslaughter conviction. Because we
find that the evidence is sufficient, we affirm.

We review the sufficiency of the evidence under the standard
of review set forth in *Jackson v. Virginia,* 443 U.S. 307
(1979). *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim.
App. 2010); *Polk v. State,* 337 S.W.3d 286, 288–89
(Tex.App.—Eastland 2010, pet. ref'd). Under the *Jackson*
standard, we examine all the evidence in the light most
favorable to the verdict and determine whether, based on
that evidence and any reasonable inferences from it, any
rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. *Jackson,* 443 U.S.
at 319; *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim.
App. 2010). Evidence is insufficient under this standard
in four circumstances: (1) the record contains no evidence
probative of an element of the offense; (2) the record contains
a mere "modicum" of evidence probative of an element
of the offense; (3) the evidence conclusively establishes a
reasonable doubt; and (4) the acts alleged do not constitute the
criminal offense charged. *Brown v. State,* 381 S.W.3d 565,
573 (Tex.App.—Eastland 2012, no pet.).

We employ those standards to determine whether Hernandez
recklessly caused the death of an individual. TEX. PENAL
CODE ANN. § 19.04(a) (West 2011). A person acts
recklessly, or is reckless, with respect to circumstances
surrounding his conduct or the result of his conduct when
he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will
occur. *Id.* § 6.03(c). The risk must be of such a nature and
degree that its disregard constitutes a gross deviation from the
standard of care that an ordinary person would exercise under
all the circumstances as viewed from the actor's standpoint.
*Id.*

The events of December 2010 that culminated in the death of
Heidi Evans, the victim in this case, began with a motorcycle
ride. Adam Pruett testified that he and Hernandez went on a
motorcycle ride beginning in the midafternoon of December
26. During that ride, they stopped at Corky's Bar and Grill in
Odessa. Heath Boyd and Kelly Brown had either joined in the
ride or were already at Corky's when Pruett and Hernandez
arrived; the four of them each drank a beer and ate nachos.

**\*2** The four left Corky's and rode their motorcycles to a bar
in Midland County, the Blue Max. They had been there only
a short while when Hernandez left to pick up Evans and bring
her to the Blue Max; he and Evans returned to the Blue Max a
short time later. While at the Blue Max, the group drank beer
and "Vegas Bomb" shots. Vegas Bomb shots contain about
1.5 ounces (shot and one-half) of alcohol—one-third Crown

(Crown Royal), one-third peach schnapps, one-third Malibu (coconut rum) — and are topped off with Red Bull (an energy drink).

Because it was very cold that night, it was decided that Hernandez would ride his motorcycle home to get his vehicle and return for the others. Evans decided to ride with him. Their route took them down the service road by Loop 250 in Midland.

Two separate witnesses in two separate vehicles testified that, as they traveled on Loop 250 or the service road to Loop 250 that night, they saw a cloud of dust or a smoky or dirty substance in the air. Each of the witnesses stopped; they saw an overturned motorcycle and also saw Hernandez and Evans lying on the ground in different places in the area of the wrecked motorcycle. Neither Hernandez nor Evans was responsive or conscious. According to the testimony of the medical examiner that performed an autopsy on Evans, Evans died as a result of a closed-head injury that resulted from a motorcycle rollover.

The wreck occurred on a slight "S curve" in the roadway when Hernandez failed to make the right end of the "S curve" and hit a curb. Hernandez and Evans were both ejected from the motorcycle.

Pruett, an experienced motorcycle rider, testified to the effects that cold weather could have on a person as he drives a motorcycle. He testified that, in cold weather, "your whole body tenses up, you don't make smooth movements and transitions." Hernandez, also an experienced motorcycle driver with over twelve years of experience — during which time he had been on over one thousand rides — agreed that in cold weather a motorcycle rider's whole body stiffens and that his hands, chest, and legs would be very cold. Hernandez agreed that it was very cold the night of December 26.

Dale Garner testified before the jury as an expert on motorcycle mechanics. After the wreck, Garner examined Hernandez's motorcycle. He found nothing mechanically deficient.

Although he denied it on direct examination, on cross-examination, Hernandez admitted that, as he rode what Garner said was a properly functioning motorcycle in the cold weather of December 26 with Evans as his passenger, he was intoxicated. The results of a blood draw taken from Hernandez on the night of the wreck confirmed that he was

intoxicated. The results showed that Hernandez had a blood alcohol concentration of 0.27, over three times the legal limit of 0.08. *See id.* § 49.01(2)(B). Expert testimony at the trial reflected that a person with a blood alcohol concentration of 0.27 could not safely operate a motorized vehicle. Such an alcohol concentration could result in double vision and would be detrimental to reaction time, visual acuity, recovery from light, and the ability to perform complex tasks.

Hernandez's specific issue on appeal is that, without any testimony regarding the manner in which he operated his motorcycle and without any accident reconstruction testimony to substantiate · a conscious disregard of a substantial and unjustifiable risk, the evidence is insufficient to establish, beyond a reasonable doubt, that he is guilty of the offense of manslaughter.

**\*3** We know of no requirement that an accident reconstructionist must testify before the trier of fact is allowed to find that the accused consciously disregarded a substantial and unjustifiable risk that the circumstances existed or that the result would occur. Generally, mental culpability is such that it must be inferred from the circumstances under which the prohibited act occurred. *Griffith v. State*, 315 S.W.3d 648, 651 (Tex.App. — Eastland 2010, pet. ref'd). The trier of fact may infer a culpable mental state from the acts, words, and conduct of the defendant. *Id.* In a case that involves reckless behavior, the issue is "whether there was some evidence in the record of appellant's trial that would permit a rational jury to find beyond a reasonable doubt that he possessed the requisite culpable mental state of recklessness." *Id.* at 652. It is within the province of the trier of fact to conclude, from all the evidence and the inferences to be drawn from it, whether the accused is aware of the requisite risk. *Id.*

When viewed in the light most favorable to the verdict, the evidence shows that Hernandez had ridden motorcycles on over 1,000 rides over a twelve-year period. He was an experienced motorcycle rider and was familiar with the detrimental effects that cold weather could have on the driver of a motorcycle. He drove his motorcycle in that weather when, by his own admission, he was intoxicated; he had a blood alcohol concentration of 0.27, over three times the level at which a person is deemed to be legally intoxicated. Under the evidence and the inferences to be drawn from that evidence, a rational jury could have found that it was in that state and under those conditions that Hernandez, with Evans as his passenger, failed to negotiate a curve and wrecked his motorcycle, which resulted in Evans's death. We hold

that, based on the evidence that we have outlined and the reasonable inferences to be drawn from it, a rational jury could have found the essential elements of the offense of manslaughter beyond a reasonable doubt. Hernandez's sole issue on appeal is overruled.

We affirm the judgments of the trial court.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.